Lucy Avedisian. I represent Bilen Alemayehu, the petitioner. Mr. Avedisian, could you speak up just a little bit? I'm having a hard time hearing you. Yes, Your Honor. Thank you. I'd like to reserve two minutes, please, for rebuttal. Sure. Thank you. This matter is before the Court on a petition to review the Board of Immigration Appeals' affirming without analysis the denial of an immigration judge's asylum and withholding and the BIA's denial of a motion to remand to present a claim for protection under Convention Against Torture. That relief became available when the case was pending before the Board. The immigration judge denied Ms. Alemayehu's asylum and withholding based on a finding of adverse credibility. Their finding is not based on Ms. Alemayehu's in-court testimony, nor is it based on her demeanor. In fact, the judge noted on the record that Ms. Alemayehu's in-court testimony was consistent and that if she were to take the whole testimony as true, she would have granted asylum. The judge based the finding only on inconsistencies arising out of Alemayehu's poorly organized, poorly written application and the accompanying affidavit on the one hand and the in-court testimony on the other. Alemayehu had prepared that form and the affidavit with a friend before she was placed in proceedings. We argue that the inconsistencies that the judge perceived were not actual, and where they were present, they were not material. We argue that the judge erred when she gave more weight to the pro se and poorly prepared application and affidavit to Ms. Alemayehu's lengthy and consistent in-court testimony when the judge knew that these documents were prepared by the petitioner and the friend, when neither one were aware of the serious implications of failure to write down every fact carefully, thoughtfully, and in a sequential manner. Can I interrupt you for just a minute? In assessing credibility determinations in other proceedings, we frequently look at, let's say, post-arrest statements by a defendant in a criminal case, which are made at a time when the defendant may have waived his constitutional rights and is not counseled when making those statements. But then when he gets to trial and has the services of an attorney, we say that it's permissible for the fact finder to look at the discrepancies and use that as the basis for an adverse credibility determination. Is it your position that immigration cases are different because at the time an uncounseled petitioner prepares an asylum application, that he can't possibly know the ramifications of the law, and therefore it's not fair for the immigration judge to look at the differences? No, Your Honor. We say that that is one factor that needs to be considered by the judge, but not the only factor. So that it is permissible for the judge to look at the differences between what was said in the application, even though the petitioner didn't have a lawyer at that point. That is correct, Your Honor. But the judge should also look at the circumstances around that and consider all facts together. Okay. So these documents became part of the record of the deportation proceedings. We argue that the judge erred when she ignored the testimony, when she even the judge herself considered it as consistent, ignored country background documentations supporting petitioner's claim, documents that the judge herself characterized as substantiating human rights violations on the record. The judge ignored the petitioner's several explanations as to why the affidavit and the application submitted together were less than perfect. And the judge erred when she failed to read the application and the affidavit together as one document, even though on the application in several places it says, see attached, my statements are attached. And when the judge failed to put Ms. Almayehu on notice that her entire claim is at risk of being discounted based on what the judge perceives as fatal inconsistencies, then in our judgment, we argue that the judge erred. And because of these errors, my client is now at risk of being deported to Ethiopia where she was persecuted in the past and where she has a well-founded fear of persecution in the future. And on review, the question is, does the record contain substantial evidence that refugee status was not established? And the answer is no, because on the record, the only quote, unquote, evidence that refugee status has not been established is the poorly prepared application for asylum form and the accompanying affidavit. Is that the standard? I know we have a lot of language in our cases, but what you just said, is that the same as the record must compel the opposite conclusion? Isn't that how we review the determination by the immigration judge? My understanding is that substantial evidence, if I can phrase this properly, substantial evidence must compel a finding that the judge did not make an error. Or substantial evidence must compel the finding that asylum should have been granted. Would that be a better way to say it? I think maybe we're just playing. I think the standard is already written, so we'll work our way around it. We're not going to rewrite it today. And as far as the motion to remand, the petitioner's motion to remand was based not on new evidence or new facts to be turned over to the BIA for the first time. And it was not a form of relief that required a new or different set of documents. For example, when withholding you have, not withholding, suspension or cancellation, you have to show physical presence. Eligibility, not prime official eligibility, but actual qualification and eligibility for the relief can be established based on testimony alone. And where the record contains extensive testimony regarding past torture, degrading treatment by the government actors, countless country condition documents establishing mass violations of human rights in the country, and where the motion sufficiently describes grounds of eligibility, then the petitioner has established a prima facie evidence sufficient to warrant an inquiry whether, in fact, she qualifies or not. The petitioner made the prima facie eligibility only leaving the details with a focus on torture to be developed before the immigration court. And by denying the petitioner's motion, the Board has denied her a chance to seek a relief to which she's entitled to before she was even given the chance to present. I have a dumb question, but this case was heard by the immigration judge five years ago, and was there anything in the country report about the Amhara people still being abused by the government in the at that time? This woman's problems started when she was about a little teenager, a young kid, and her dad was imprisoned by the government because of his political persuasion and ethnicity. That is correct. But then apparently he was treated so well that he died as a result of his being in prison. So she was making a pretty good case about what was going on as far as her family was concerned at the time. Did the immigration judge think that the conditions had changed or just didn't believe her? The record has no indication whether the judge – well, in fact, the only indication on the record is that the judge found that there's substantial evidence – well, not substantial evidence – that there's evidence of human rights violations corroborating the claim. Well, we could almost take judicial notice. Right. The human rights situation in Ethiopia in the 1990s, early 90s, was terrible. That is correct, Your Honor. The evidence – and I have the number of pages. You have a lot of taxi drivers in Los Angeles who will testify to that. The record – there are pages, and I can give you the page numbers. There's a lot of documents about the country conditions around 94, 95, and that's when – that's closer to the hearing date. The judge did not say these are not relevant or the country conditions had changed. The only reference to those documents is that there's documents substantiating human rights violations. Okay. Do you want to save the rest of your time? Yes, Your Honor. Okay. Welcome back. Thank you, Your Honor. May it please the Court, for the record, nor ask Felice Schwartz to respond to John Ashcroft. We have here a case. If credible, there would have been – as the immigration judge found, if she were entirely credible, she would have found to – been found to have established past persecution. However, we're not talking about a minor inconsistency here. We are talking about in her asylum application, whoever fills it out, she left out the most significant fact, the basis of her claim, the one-month detention. And – Two months. That's it. I'm sorry. See, it gets even worse what you've left out. She was in the slammer for two months. And that's it. And that – I mean, the other one – everything else was minor compared to that. I mean, you are talking about being beaten, tortured, kicked for three months, and in jail for three months, kept under even just horrible and sanitary conditions in a locked cell, no light, occasionally fed leftovers. And you don't mention that when you're asking for asylum. Moreover, she – part of the reason it was an old record was because she was here for three years before she applied for asylum. So conditions had changed and had improved, as the country reports show. The only persons of – who are, according to the country reports of 1998, I believe, are – that were submitted, only persons of the – Wait a minute. I'm sorry. She left out what? The two-month detention. I'm sorry. My father, Colonel Alamehu, was in prison, tortured, and later died of his maltreatment. In 1991, I was threatened and physically assaulted at a demonstration. Calling for the protection of the Amharas, I was later arrested, interrogated, tortured, and accused of involvement with the anti-EPRDF groups. I was in prison for two months in a horrible jail and released. Is that the two-month one? Then it was the affidavit that it was left out. But the point is, these were prepared two months apart. They were not prepared together. They're not – So what? I mean, it's not as if she didn't mention it. It's in the I – it's in the form, I-589. Pardon me, Your Honor. Pardon? 345? Okay. And please forgive me. I just took this case on last week. I didn't brief it. Well, I – You know what our calendar is like. Yeah, so is ours. Yes. And I'm sorry for all the cases before you. But if that's – I'm just reading out of the I-589. Yes, okay. So in the – it was in the affidavit, which she had prepared two months before. Yes. And so this is her first application. Right. Her first venture into the asylum, and she leaves it out. And then she puts it in on the next one, so two months later. This is a – It is considered an inconsistency. There are other minor ones which the immigration judge detailed, and plus there was the demeanor testimony. But he was very – I don't remember if it was a he or she. I think it was a she. She was very clear in her decision. She based it not on demeanor. She based it on the inconsistency with the documents. With the documents. She purported to have looked at the I-589. Yes. And the declaration. And it makes precisely the point which you said was the most important foundation of her claims. And that was omitted from the first document she prepared. So that does it. So she doesn't put it in her short application, and that's the end of the story. She put it in her – she left it out of her first application, which was a lot longer, actually. So there was no cross-reference. There was no incorporation by reference. Just because they were submitted together doesn't mean that they had to be internally consistent. Plus the fact – what I would really like to point out here is when she was asked why is – how can you explain this, she said at the hearing, I have no explanation. And I will give you that statement. I'm familiar with that. And all the explanations that are being proffered now are counsel's. And statements of counsel are not evidence. So the fact that there's a reasonable explanation for the inconsistencies or for the omission falls far short of the standard for reversal, which is the evidence must compel no conclusion other than all the possible suggestions that her attorneys have made for – on her behalf. Now, you say there's no cross-reference. I'm just trying to figure out what I'm looking at here. I'm looking at the I-589. And that was May 19. And then there's an affidavit, right, of June 96? And I think that starts at 349. And is that what you're talking about? I believe so. And she says she attached in her I-589? I believe so.  I just want to make sure we're looking at the same thing. She's talking about the two-month detention. And this is the long narrative that she's relying on. And whether she's – So, okay. They kept me for about two weeks during my detention on 351. That was in 3-1. Talking about something else? And later she, in her later – Slammed me against the wall during the interrogation. Right. It was not pleasant. It was two weeks. And even that alone might have been found to have constituted past persecution. However, it was the omission of the more significant one that troubled the immigration judge, plus the fact that the country reports do not indicate that members of the – is it the AAPL? – are persecuted. It's their members of the government. And, again, this is because she took so long to file her asylum application, which, in fact, now under the – in removal proceedings would bar her completely from asylum. She waited three years. And conditions have changed. The AAPL is now part of the functioning government. The only persons – and this is consistent in the reports – the only persons who are harmed who are members of the AAPL are those who espouse violent action. But leaders of the AAPL are not harmed. And she was not even a leader, a peaceful leader. She was a student demonstrator, and she demonstrated with other students. So was the government's position at the hearing, then, that even if she had been found to be credible, that the presumption of future persecution would be rebutted by the regime of the country? It would be rebutted. And that's – I will concede the immigration judge didn't say that directly, but he did say that conditions in the country – well, the conditions had changed and that she had been here so long, and that conditions had changed and she presently had no wealth under fear of persecution. Implicit in that is that the country conditions have changed. And the fact is no one in her family was harmed. Her two sisters at some point were interrogated, but she doesn't know why, so that can't be a basis for her claim. And the evidence is these things that the harm is not against members of the Amhari tribe are not being perpetrated anymore. Just the violent terrorist actions and those espousing them are being targeted by the government, and rightfully so. I mean, no one has the right to commit terrorist acts. There's also in the record, at least in the motion in the state proceedings, that she had filed a motion to reopen to a just status. I would like to inform the Court that that has been denied, it was denied, and the time to seek review has expired. So that's – even though that was mentioned in the pleadings, it's not an issue before this Court. As to the issue of cat protection, there is no issue of cat protection before this Court. As the government learned to its detriment in Kamalthus, you can't say, well, just consider my asylum claim for my cat claim. That's – it's a different burden of proof. It's a different showing of proof. You don't have to show that it's on account of. You have to show there's a clear probability that you will be tortured. She made no such showing. Even in Abassi, where there was a pro se alien who said, well, this is what I expect will happen to me, and I'm basing this on the country report, this Court found that he didn't – he had made a prima facie showing because he had explained why he thought he would be tortured, and although he didn't attach the document, the Board should have considered it because that he did incorporate by reference. In this case, Petitioner is not pro se. She's represented by counsel, and she says, well, if you give me a chance, I'll show you that I would qualify for cat protection. That does not suffice to warrant a motion to reopen. So in summation, there is the inconsistency was dramatic. It was material. There is no reason that she shouldn't have mentioned a two-month detention during which she was tortured, if indeed it had even happened. But even having her credible, the fact is she presently has no well-founded fear of persecution, and the evidence in the record rebuts any such presumption. Do I have any questions? Thank you, Your Honors. Your Honors, as far as – Assuming we agreed with you on credibility finding, how do you respond to the well-founded fear of future prosecution? That was the question Judge Goodwin, I think, was asking. Once there's past persecution, there's also a presumption of future persecution and also persecution based on pattern and practice of persecution of similarly situated individuals. And also, as far as the sisters are concerned, there's evidence in the records. If you don't want me to go through the credibility, that's fine. But there's evidence that the sisters were asked regarding the Amhara situation. So that clearly gets the nexus there. I wasn't trying to cut you off on anything. I'd say you didn't have to talk about credibility. I was asking a specific question. Counsel for the government has argued that even if there was credibility, she wouldn't survive on the well-founded fear of future prosecution. Well, the law is if you – You would argue that the government didn't rebut the presumption. That is correct. If the taint of credibility is removed, there is past persecution, therefore presumption and also pattern and practice. And there's several documents on the record regarding that. Okay. You were saying something about the sisters. I didn't understand what that was going to. Well, I don't know if I need to mention that on the application and the affidavit, both mentioned the two months. And I have the pages, 345 of the record and 349, not only the application but also the affidavit mentions the two months' imprisonment. So that's not on the mission. As far as conditions have improved, the record, according to the judge, says, State Department reports that although conditions have improved significantly from when the respondents lived in Ethiopia, there are still human rights violations, and that is also substantiated by other general background documentations on the record. That goes to the countries. Okay. So you're saying that when she said on paragraph 2 of page 1 of her affidavit that I was after two terrible months in jail, that's what she was referring to? That is correct. All right.  Thank you very much. The case just argued is submitted. All right. I have both lawyers here for the other case. So we're missing. Okay. So we don't have counsel on the last two cases here, then. I know, but we don't have a full complement. Okay. First of all, the next case on calendar is Geta v. Ashcroft. That's submitted on the briefs, and we will – that is submitted. I'm informed that counsel on the remaining two cases in Galanis and Fernandez are not – a full complement are not here. We will take a recess for approximately 10 minutes, and then we'll reconvene. Do you want a conference on these cases? Yeah. All right. Thank you, counsel. We'll see you another day. Thank you. Okay. Thank you. All right. I don't know. They might hear from you, and they could ask questions of you, or they might submit it on the briefs. All right. Thanks. Thank you.
judges: Goodwin, Fisher, Tallman